**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DENNIS BANNON, | : |
| | : CIVIL ACTION NO. 08-5998 (MLC) |
| Plaintiff, | : |
| | : |
| v. | : **O P I N I O N** |
| | : |
| CHARLES ELLIS, et al., | : |
| | : |
| Defendants. | : |

**APPEARANCES:**

Dennis Bannon, Pro Se, #620431
Northern State Prison, 168 Frontage Road, Newark, NJ 07114

**COOPER, District Judge**

Plaintiff, Dennis Bannon, who is confined at the Northern State Prison, Newark, New Jersey, brings this action alleging violations of his constitutional rights. He paid the filing fee.

The Court must review the complaint pursuant to 28 U.S.C. § 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. The complaint will be dismissed for the following reasons.

### BACKGROUND

Plaintiff states that on September 14, 2008, while housed in the Mercer County Correctional Institution ("MCCI"), he was assaulted by another inmate. As a result, he suffered, inter alia, a broken jaw and severed nerve, which resulted in his jaw

being wired shut for eight weeks.  Plaintiff states that after the assault, he was sent to the infirmary and waited an hour and a half for treatment.  He was then sent to a hospital, where he waited for five hours in the emergency room handcuffed, shackled and belted.  He received x-rays, and was then sent "across town" to a trauma center because of head swelling and facial injuries.  Plaintiff states that the manner of transport was "abusive", as he was handcuffed and not given a seat belt, so he fell twice.

   Plaintiff alleges that he was transferred in an ambulance to another hospital where he spent two and a half days.  His jaw was wired and a metal plate was installed.  Plaintiff was then sent back to the MCCI infirmary.  His pain medication was canceled and his antibiotic was changed by a nurse.  He did not see a doctor until he explained to the warden that his medication had been canceled prematurely.  When he saw the doctor, his antibiotic was restarted, but was administered on a "sporadic" basis.  Plaintiff notes that the doctor he saw was not a specialist.

   Plaintiff states that he had asked to be moved to a different housing unit at least six times because of threats.  He states that the "D-Pod," where he was housed when the attack occurred, houses mostly gang members.  Plaintiff states that he was housed there in retaliation for "quitting the kitchen."

   Plaintiff also asserts that defendants violated his rights by housing him on the gym floor with 90 other inmates, with one

toilet and one sink; housing him with mentally ill inmates, gang members, and sex offenders in the infirmary wing; and for failing to send his medical file to CRAF with him.

Plaintiff names Warden Charles Ellis and the MCCI as defendants.  He seeks monetary relief.

## DISCUSSION

**A.    Standard of Review**

A court must dismiss a suit brought by a prisoner, at the earliest practicable time, that is frivolous, malicious, fails to state a claim, or seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A; Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996) (stating purpose of Section 1915A is "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Torts Claims Act ... many of which are routinely dismissed as legally frivolous").

In determining the sufficiency of a complaint, the Court must construe the facts stated therein liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  But a court need not accept bald assertions, unsupported conclusions,

3

unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  See id.

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  The pleading standard, under Rule 8:

> can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage[ ]' but . . . 'calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.

Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (internal citations omitted).

**B.  42 U.S.C. § 1983**

To establish a violation of 42 U.S.C. § 1983, a plaintiff must demonstrate that the challenged conduct (1) was committed by a person acting under color of state law and (2) deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

4

**C.   Mercer County Correctional Institution**

The claims against MCCI must be dismissed because it is not a "person" subject to suit under § 1983.  See Mitchell v. Chester County Farms Prison, 426 F.Supp. 271, 274 (E.D. Pa. 1976); see also Marsden v. Fed. BOP, 856 F.Supp. 832, 836 (S.D.N.Y. 1994) (county jail not entity amenable to suit under § 1983); Powell v. Cook County Jail, 814 F.Supp. 757, 758 (N.D. Ill. 1993) (jail not a "person" under § 1983); McCoy v. Chesapeake Corr. Ctr., 788 F.Supp. 890, 893-94 (E.D. Va. 1992) (local jail not a "person" under § 1983).

**D.   Claims Against the Warden**

Liberally construing the complaint, Plaintiff brings claims against the MCCI warden for failure to provide medical treatment, failure to protect, and for unconstitutional conditions of confinement.

### 1.   Medical Care Claim

The Eighth Amendment proscription against cruel and unusual punishment also requires that prison officials provide inmates with adequate medical care.  See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999). In order to set forth a cognizable claim for a violation of the right to adequate medical care, an inmate must allege:  (1) a serious medical need; and (2) behavior on the part of prison officials constituting deliberate indifference to that need.

Estelle, 429 U.S. at 106; Natale v. Camden County Corr. Fac., 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first part of the Estelle inquiry, the inmate must demonstrate that the medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992). A serious medical need is one: (1) "that has been diagnosed by a physician as requiring treatment;" (2) "that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003) (internal quotations and citations omitted); see also Monmouth County Corr. Inst'l Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

The second part of the Estelle inquiry requires an inmate to show that prison officials were deliberately indifferent to the serious medical need. See Natale, 318 F.3d at 582 (finding deliberate indifference shown when official knew of and disregarded excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk

of harm.  See Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with medical care does not in itself indicate deliberate indifference.  See Andrews v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F.Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment."  Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted).  Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be shown is medical malpractice and not an Eighth Amendment violation.  See Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

A prison official is deliberately indifferent where the official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment.  See Rouse, 182 F.3d at 197.  Also, needless suffering resulting from the denial of simple medical care, which does not serve any penological

7

purpose, violates the Eighth Amendment.  See Atkinson, 316 F.3d at 266.  See also Monmouth County Corr. Inst'l Inmates, 834 F.2d at 346 (deliberate indifference demonstrated when prison authorities prevent inmate from receiving recommended treatment for serious medical needs or deny access to physician capable of evaluating need for such treatment); Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993).

It appears here that Plaintiff's medical needs were serious, as he suffered a broken jaw and other injuries due to an assault.  However, Plaintiff has not alleged facts indicating deliberate indifference by the Warden.  Plaintiff notes that after the assault he was treated at a hospital, spent two and a half days in the hospital, was sent to the prison infirmary, and was seen by a doctor and given medication.  While the time period in which these events occurred may not have been to Plaintiff's liking, the facts alleged in the complaint do not indicate deliberate indifference in violation of the Constitution.

Therefore, this claim will be dismissed, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief may be granted.

**2.   Failure to Protect Claim**

Liberally construing the complaint, Plaintiff alleges that the Warden violated his Fourteenth Amendment due process right by failing to protect him and placing him in danger by housing him in the "D-Pod" despite knowing of problems with gang members.

8

But "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." <u>DeShaney v. Winnebago County Dep't of Soc. Servs.</u>, 489 U.S. 189, 197 (1989). Notwithstanding, "in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." <u>Id.</u> at 198.

One exception to the general rule is "where the State has created or exacerbated the danger which a third party poses to the plaintiff." <u>Nannay v. Rowan College</u>, 101 F.Supp.2d 272, 285 (D.N.J. 2000). "When state actors knowingly place a person in danger, the due process clause of the constitution . . . render[s] them accountable for the foreseeable injuries that result from their conduct." <u>Mark v. Bor. of Hatboro</u>, 51 F.3d 1137, 1151 (3d Cir. 1995). Liability under the Due Process Clause may be imposed "where the harm-though at the hands of a private actor-is the product of state action that legitimately can be characterized as affirmative conduct." <u>Id.</u>

There is a four-part test to determine if a state-created danger exists in a given case:

>  (1) "the harm ultimately caused was foreseeable and fairly direct;"
>
>  (2) a state actor acted with a degree of culpability that shocks the conscience;
>
>  (3) a relationship between the state and the plaintiff existed such that "the plaintiff was a foreseeable victim of the defendant's acts" or a "member of a

9

>discrete class of person subject to the potential harm brought about by the state's actions," as opposed to a member of the public in general; and
>
>(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006) (internal citations and footnotes omitted); see Kneipp v. Tedder, 95 F.3d 1199, 1208 (3d Cir. 1996) (citations omitted). "The cases where the state-created danger theory [is] applied [a]re based on discrete, grossly reckless acts committed by the state or state actors using their peculiar positions as state actors, leaving a discrete plaintiff vulnerable to foreseeable injury." Kneipp, 95 F.3d at 1208 (citations omitted). Further, "negligent behavior can never rise to the level of conscience shocking." Kaucher v. County of Bucks, 455 F.3d 418, 426 (3d Cir. 2006) (citing County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998)).

Plaintiff here has failed to allege facts indicating the existence of the four Bright factors. Plaintiff notes that on many occasions he asked to be moved, and told officers three days before the assault that he was being threatened. Liberally construing the complaint, Plaintiff may have alleged facts indicating that the defendants were negligent; however, he has not alleged facts indicating that the housing decision "shocked the conscience." See Estate of Soberal v. City of Jersey City, 2006 WL 2085397, at *7-*8 (D.N.J. Jul 25, 2006) (noting that

10

courts "have consistently held that the state's mere negligence will not 'shock the conscience' for purposes of establishing a substantive due process claim"). Further, Plaintiff has not alleged facts indicating that the Warden used his authority to create the danger of the unprovoked inmate attack.

Because Plaintiff has failed to establish a Fourteenth Amendment violation, this claim will be dismissed for failure to state a claim upon which relief may be granted.

### 3. Retaliation Claim

Plaintiff alleges that he was moved to the "D-Pod" as "retribution" for quitting his kitchen job. Liberally construing the complaint, Plaintiff attempts to assert a retaliation claim; he was given unfavorable housing placement due to his quitting his kitchen job.

To state a claim for retaliation, Plaintiff must show that: "(i) he engaged in constitutionally protected conduct; (ii) an adverse action was taken by prison officials 'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;' and (iii) there was a causal relationship between the two." See Adegbuji v. Green, 280 Fed.Appx. 144, 148 (3d Cir. 2008) (quoting and citing Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001); Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in

the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334.

Plaintiff here does not allege facts indicating that he was engaged in constitutionally protected conduct. Plaintiff states that he quit his kitchen job and was given unfavorable housing assignment. Quitting his kitchen job is not "constitutionally protected conduct"; an inmate has no property or liberty interest protected by the Constitution in this instance. See James v. Quinlan, 866 F.2d 627, 629-30 (3d Cir. 1989); Johnson v. Fauver, 559 F.Supp. 1287, 1290 (D.N.J. 1983). Any property or liberty interest must be created by statutes or regulations. See Hewitt v. Helms, 459 U.S. 460, 472 (1983). While New Jersey law states that "inmates of all correctional . . . institutions . . . shall be employed," this language does not create a liberty or property interest in employment for inmates. See N.J.S.A. § 30:4-92; Little v. Terhune, 200 F.Supp.2d 445, 450 & n.4 (D.N.J. 2002) ("fact that New Jersey may have granted prisoners access to [educational and work] programs does not necessarily grant inmates a liberty or property interest in them"); Johnson, 559 F.Supp. at 1290-91 (statutory scheme does not "create a liberty or property interest in a right to work, despite statutory language that all inmates 'shall be employed'"); Rowe v. Fauver, 533 F.Supp. 1239

12

(D.N.J. 1982) (despite statutory language, "corrections officials have considerable discretion in providing or not providing work opportunities even where the health, strength and mental capacity of inmate are not involved, and thus inmate did not possess a state-created 'liberty' interest in prison employment").

As Plaintiff had no liberty interest, or constitutional right to employment — and as he states that he "quit" his job, meaning he did so voluntarily — Plaintiff has not alleged facts indicating a retaliation claim under the First Amendment. This claim will be dismissed for failure to state a claim upon which relief may be granted.

**4. Conditions of Confinement**

Plaintiff notes that he was housed on the gym floor with 90 other inmates, "with one toilet, one sink first five days [sic]." He also alleges that when he was in the infirmary wing, he was housed with the mentally ill, gang members, and sex offenders.

Plaintiff's claims could be liberally construed as challenging the conditions of confinement. The Eighth Amendment, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. See Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981). The Eighth Amendment proscription against cruel and unusual punishments is violated by the "unnecessary and wanton infliction of pain contrary to

13

contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993). The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Id. at 31.

To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). A plaintiff may satisfy the objective component of a conditions of confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. See Rhodes, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992). However, while the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons." Rhodes, 452 U.S. at 349. To the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay. See id. at 347.

The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm. See Farmer, 511 U.S. at 835; Wilson, 501 U.S. at 303. An inmate may fulfill the subjective element of such a claim by alleging facts indicating

14

that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." Ingalls v. Florio, 968 F.Supp. 193, 198 (D.N.J. 1997).

Plaintiff here has not alleged facts indicating that there was a substantial risk of harm to his health or safety due to the five days he was housed on the gym floor.  For example, Plaintiff does not assert that he has suffered any medical problems, or was in any physical danger due to the alleged shortage of facilities. While the conditions described by Plaintiff may not be considered "ideal," Plaintiff has not alleged facts indicating that the conditions were serious, or posed him harm.  Plaintiff has not alleged facts showing that he was deprived of food, clothing, shelter, sanitation, medical care, or personal safety; he has merely demonstrated that he was inconvenienced.  That is not enough to rise to a level of constitutional deprivation.

Therefore, Plaintiff's conditions of confinement claim will be dismissed for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915A(b)(1).[1]

---

[1] The Court also finds that Plaintiff's claim that his medical records were not sent to CRAF with him, does not state a claim of constitutional magnitude, and will be dismissed.

**CONCLUSION**

Based on the foregoing, the complaint will be dismissed. The Court will issue an appropriate Order and Judgment.

s/Mary L. Cooper<br>
**MARY L. COOPER**<br>
United States District Judge

Dated:    June 29, 2009